1   **COMP**
2   DENNIS M. PRINCE
    Nevada Bar No. 5092
3   DOUGLAS J. DUESMAN
    Nevada Bar No. 10341
4   **PRINCE & KEATING**
5   3230 South Buffalo Drive
    Suite 108
6   Las Vegas, Nevada  89117
    Telephone:  (702) 228-6800
7   Facsimile:   (702) 228-0443
    *E-Mail:  DPrince@princekeating.com*
8   *E-Mail:  DDuesman@princekeating.com*
    Attorneys for Plaintiffs
9   *Amerisure Insurance Company &*
10  *Amerisure Mutual Insurance Company*

11

12              **UNITED STATES DISTRICT COURT**

13                   **DISTRICT OF NEVADA**

14

15  AMERISURE INSURANCE COMPANY, a      )
    Michigan Corporation and AMERISURE  )
16  MUTUAL INSURANCE COMPANY, a         )   CASE NO.:
    Michigan Corporation,               )   DEPT NO.:
17                                      )
                                        )
18         Plaintiffs,                  )
                                        )
19         -vs-                         )
                                        )
20  SUMMIT CONTRACTORS, INC., dba       )   **COMPLAINT FOR DECLARATORY**
    SUMMIT SOUTHWEST, INC.; THE EDGE    )   **RELIEF**
21  AT RENO CONDOMINIUM UNIT-           )
    OWNERS ASSOCIATION, INC.; THE       )
22  EDGE AT RENO, LLC; THE UNIVERSITY   )
    HOUSING GROUP, INC., and CRUM &     )
23  FORSTER SPECIALTY INSURANCE         )
    COMPANY,                            )
24                                      )
                                        )
25         Defendants.                  )
                                        )
26  _____ )

27      COMES NOW, Plaintiffs, AMERISURE INSURANCE COMPANY and AMERISURE

28  MUTUAL INSURANCE COMPANY (herein collectively "Amerisure" or "Plaintiffs"), by and

**PRINCE & KEATING**
ATTORNEYS AT LAW
3230 SOUTH BUFFALO DRIVE, SUITE 108
LAS VEGAS, NEVADA 89117
PHONE (702) 228-6800

Page 1 of 22

through undersigned counsel, and files their Complaint for Declaratory Judgment pursuant to *28 U.S.C. § 2201*, against Defendants, SUMMIT CONTRACTORS, INC., dba SUMMIT SOUTHWEST, INC. (herein "Summit" or "insured"), THE EDGE AT RENO CONDOMINIUM UNIT-OWNERS ASSOCIATION, INC. (herein "Unit-Owners Association" or "underlying plaintiff"), THE EDGE AT RENO, LLC., THE UNIVERSITY HOUSING GROUP, INC. (collectively herein "cross-claimants"), and CRUM & FORSTER SPECIALTY INSURANCE COMPANY, and in support thereof states as follows:

## I.

## NATURE OF ACTION AND RELIEF SOUGHT

1. This action seeks declaratory relief pursuant to 28 U.S.C. § 2201 and 2202.

2. The Plaintiffs seek a declaration that they owe no duty to defend or indemnify Defendant Summit under policies of liability insurance issued by Amerisure in connection with an underlying lawsuit styled *The Edge At Reno Condominium Unit-Owners Association, Inc., et al., v. The Edge At Reno, LLC, et al.,* Case No. CV08-03304, which is currently pending in the Second Judicial District court for the State of Nevada, County of Washoe (herein "*Unit-Owners* lawsuit" or "underlying lawsuit").

3. There is clearly an actual, present and *bona fide* controversy between the parties with respect to Amerisure's coverage obligations to defend and/or indemnify Summit as defendant in the underlying lawsuit for potential liability to the *Unit-Owners* Association.

4. Amerisure's rights and duties pursuant to the policy are dependent upon this Court's interpretation of the policy's terms, conditions, limitations, provisions, exclusions and endorsements.

5. The adverse parties are all before the court by proper process.

PRINCE & KEATING
ATTORNEYS AT LAW
3230 SOUTH BUFFALO DRIVE, SUITE 108
LAS VEGAS, NEVADA 89117
PHONE (702) 228-6800

## II.

## **PARTIES**

6.     At the time of the commencement of this action, Plaintiff Amerisure Insurance Company was an insurance company organized and existing under the laws of the State of Michigan. At the time of filing this action, Amerisure Insurance Company's principal place of business was Farmington Hills, Michigan.

7.     At the time of the commencement of this action, Plaintiff Amerisure Mutual Insurance Company was an insurance company organized and existing under the laws of the State of Michigan. At the time of filing this action, Amerisure Mutual Insurance Company's principal place of business was Farmington Hills, Michigan.

8.     At the time of the commencement of this action, Defendant Summit was a for profit corporation, organized under the laws of the State of Florida, whose principal place of business was located in Jacksonville, Florida with an address of 2110 Herschel Street, Jacksonville, Florida 32204.

9.     At the time of the commencement of this action, Defendant The Edge At Reno Condominium Unit-Owners Association, Inc. was a non-profit mutual benefit corporation, incorporated under the laws of the State of Nevada, with its principal place of business in Washoe County, Nevada.

10.     At the time of the commencement of this action, Defendant The Edge At Reno, LLC was a limited liability company, organized under the laws of the State of Nevada, with its principal place of business located in Washoe County, Nevada.

11.     At the time of the commencement of this action, Defendant The University Housing Group, Inc. was a corporation, organized and existing under the laws of the State of

PRINCE & KEATING
ATTORNEYS AT LAW
3230 SOUTH BUFFALO DRIVE, SUITE 108
LAS VEGAS, NEVADA 89117
PHONE (702) 228-6800

Virginia.

12.     Upon information and belief, at the time of the commencement of this action, Defendant Crum & Forster Specialty Insurance Company (herein "Crum & Forester") as a corporation organized under the laws of the State of Delaware and with its principal place of business in Morristown, New Jersey.

13.     No specific relief is requested against Defendants Unit-Owners Association and Cross-Claimants, who have been joined in an effort to bind them to any resulting judgment and because they are plaintiffs and cross-claimants, respectively, in the underlying lawsuit, and thus necessary parties to this action. Should these Defendants stipulate to be bound by the declaration of rights herein, Amerisure will consider dismissing them from this matter.

14.     No specific relief is requested against Defendant, Crum & Forester, who has been joined because it also provided Commercial General Liability coverage to Summit Contractors, Inc., under the following policies: GLO 090899 (effective from 9/20/05 to 9/20/06); GLO 091290 (effective 9/20/06 to 9/20/07); GLO 101450 (effective 9/20/07 to 9/20/08); and GLO 131243 (effective from 9/20/08 to 9/20/09);[1] and thus, should be included in and bound by any resulting judgment in this matter. Should this Defendant stipulate to be bound by the declaration of rights entered in this matter, Amerisure will consider dismissing it from this matter.

### III.

### JURISDICTION AND VENUE

15.     This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between the parties, and because the amount in

---

[1] Amerisure sought copies of such policies from Defendant, Crum & Forster.  However, Crum & Forster refused to provide the subject policies.  See **Exhibit A.**

PRINCE & KEATING
ATTORNEYS AT LAW
3230 SOUTH BUFFALO DRIVE, SUITE 108
LAS VEGAS, NEVADA 89117
PHONE (702) 228-6800

controversy, exclusive of interest and costs, exceeds the sum of $75,000.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (a) and (c).

## IV.

## BACKGROUND

**A.     THE CONSTRUCTION OF THE PROJECT**

17.     On information and belief, Summit entered into a contract for the construction of the Edge At Reno Condominium Community (herein "the subject property") on March 30, 2004. On information and belief, construction began at the subject property in April of 2004.

18.     The subject property is a multi-family development located at 200 Talus Way, Reno, Nevada. The subject property consists of four separate dwelling structures and a common recreation building.

19.     On information and belief, certificates of occupancy relating to the subject property were issued in November, 2005 for the first four buildings, and on December 1, 2005 for the fifth building.

20.     Visual inspections and destructive testing at the subject property took place in May, 2007. *See* Exhibit "A"., a true and correct copy of the January 14, 2008, Chapter 40 Notice.


21.     On or about January 14, 2008, The Edge at Reno Condominium Unit-Owners Association, Inc., on behalf of itself and its individual unit owners served its NRS Chapter 40 Notice of Claims (NRS 40.645) upon all developers, builders, declarants, contractors, and subcontractors. *See* Exhibit "B".

**B.     THE UNIT-OWNERS' LAWSUIT**

22.     The *Unit-Owners* Association is the plaintiff in the underlying lawsuit filed in the

PRINCE & KEATING
ATTORNEYS AT LAW
3230 SOUTH BUFFALO DRIVE, SUITE 108
LAS VEGAS, NEVADA 89117
PHONE (702) 228-6800

Page 5 of 22

Second Judicial District Court for the State of Nevada, County of Washoe, which seeks amounts allegedly attributable to the defective construction at the subject property. A true and correct copy of the Unit-Owners' First Amended Complaint is attached as Exhibit "C".

23.     The *Unit-Owners'* First Amended Complaint alleges that prior to filing the initial complaint, on or about January 24, 2008, the Unit-Owners Association delivered to defendants in the underlying lawsuit a Written Notice of Claims and a list of known or identified defects together with a report executed by the expert contractor who performed inspections on the subject property. *See* Exhibits "B" & "C".

24.     The *Unit-Owners* Association alleges that, in connection with filing the Notice of Claims, it retained an expert who conducted "visual inspections that have taken place at various times and destructive testing, which occurred in May 2007" at the subject property. *See* Exhibit "B", Attachment 3.

25.     As a result of the expert's visual and invasive testing, the *Unit-Owners'* First Amended Complaint alleges the existence of damages including, but are not limited to: "structural failures and damage, moisture intrusion and interior staining; spalling and deterioration of slabs, shear walls, post-tensioned slabs, footings and slabs on grade; stucco cracking, brick veneer separation, sidewalk deterioration; deterioration, crumbling, staining and efflorescence damage to the exterior walls, differential settlement in expansion joints; missing or inadequate fire stopping; failure of drainage, waterproofing and moisture intrusion at balcony decks, windows and building exterior envelope; spalling stucco; deterioration and cracking of concrete at building exterior, failure of unit decks and corridor decks; failure of building EFIS system; failure of wall systems; failure of roofing systems, doors, handrails, waterproofing, planters, landscape, deck drains, caulking, retaining walls, stairs, concrete flatwork, driveways, interior finishes, landing

PRINCE & KEATING
ATTORNEYS AT LAW
3230 SOUTH BUFFALO DRIVE, SUITE 108
LAS VEGAS, NEVADA 89117
PHONE (702) 228-6800

Page 6 of 22

elevations, pool, pool cracks, pool deck cracks, masonry and segmented retaining walls, HVAC systems, mechanical systems, plumbing systems, fire proofing systems, fire alarms system, fire escape routes and exits, paving, electrical systems, and such other matters as are reported by Plaintiff's experts in their current Preliminary Statement of Defects." *See* Exhibit "C", ¶ 28, & Exhibit "B", attachments 1 & 2.

26.     The *Unit-Owners* Association maintains that it "only became sufficiently aware of the defects and damages…through damage that arose after the time of purchase and as a result of complex inspections and intrusive testing performed by expert consultants." *See* Exhibit "C", ¶ 33).

27.     The *Unit-Owners'* First Amended Complaint alleges that "due to said defects and deficiencies, and resulting damages, the [s]ubject [p]ropert[y] has been adversely impacted so as to diminish the function, value, marketability, habitability and saleability…thereby affecting and interfering with health, safety, and welfare of the [Unit-Owners Association] and its members, and their use, habitation and peaceful and quiet enjoyment." *See* Exhibit "C", ¶ 32.

28.     All damages alleged in the *Unit-Owners'* First Amended Complaint arose after the time of purchase of the subject property and first manifested at the time of the expert's inspections and testing, which occurred in May of 2007.

29.     On March 23, 2009, The Edge At Reno, LLC, The Bradley Companies, Inc., and University Housing Group, Inc. filed a cross-claim against Summit seeking indemnity and/or contribution to the extent the cross-claimants are found liable in the underlying lawsuit. A true and correct copy of the cross-complaint is attached as Exhibit "D".

///

///

PRINCE & KEATING
ATTORNEYS AT LAW
3230 SOUTH BUFFALO DRIVE, SUITE 108
LAS VEGAS, NEVADA 89117
PHONE (702) 228-6800

Page 7 of 22

## C.     THE AMERISURE POLICIES

### 1.     <u>Amerisure Primary Policy No. GL 2005207030004</u>

30.     Amerisure issued policy number GL 2005207030004 to Summit, which includes a Commercial General Liability coverage part and was effective from December 31, 2004 to September 20, 2005 (herein "Amerisure Primary Policy").[2]  A true and correct copy of the Amerisure Primary Policy is attached as Exhibit "E".

31.     Summit completed and filed its application for the Amerisure Primary Policy in Florida.

32.     Summit engaged the service of Construction Insurance Corp., a Florida producer, to negotiate the terms and conditions of the Amerisure Primary Policy.

33.     All negotiations relative to the procurement of the Amerisure Primary Policy took place in Florida.

34.     Amerisure issued and delivered the Amerisure Primary Policy to Summit in Florida.

35.     Summit paid premiums, relative to the Amerisure Primary Policy, in Florida.

36.     The Amerisure Primary Policy affords coverage, subject to the terms and conditions of the policy, for Summit's operations in Florida and elsewhere.

37.     The Commercial General Liability Coverage Part of the Amerisure Primary Policy states in relevant part:

**SECTION I - COVERAGES**

**COVERAGE A.   BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

---

[2] While originally written to be effective until December 31, 2005, Amerisure Primary Policy was cancelled effective September 20, 2005.

PRINCE & KEATING
ATTORNEYS AT LAW
3230 SOUTH BUFFALO DRIVE, SUITE 108
LAS VEGAS, NEVADA 89117
PHONE (702) 228-6800

**1.      Insuring Agreement**

       a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply....

*        *        *

             No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

       b.      This insurance applies only to "bodily injury" and "property damage" only if:

          (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

          (2)    The "bodily injury" or "property damage" occurs during the policy period...

*        *        *

*See* Exhibit "E", Section I, pg. 1 of 16.

    38.    The Amerisure Primary Policy includes the following endorsements:

**CONTRACTORS PROFESSIONAL SERVICES LIABILITY COVERAGE ENDORSEMENT**

This endorsement modifies the insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

*        *        *

By the addition of this endorsement to your policy, your coverage is extended to provide Contractor Professional Services Liability Coverage subject to the provisions which follow.   This coverage is added to or amends specified **SECTION(S)** in the **COMMERCIAL GENERAL LIABILITY COVERAGE FORM** contained in your policy.   All other terms and conditions of the

PRINCE & KEATING
ATTORNEYS AT LAW
3230 SOUTH BUFFALO DRIVE, SUITE 108
LAS VEGAS, NEVADA 89117
PHONE (702) 228-6800

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM** apply to the coverage afforded in this endorsement, except those sections amended specifically in this endorsement.  THE COVERAGE, TERMS AND CONDITIONS IN THIS ENDORSEMENT APPLY ONLY TO CONTRACTORS PROFESSIONAL SERVICES LIABILITY COVERAGE.

1.     **SECTION I – COVERAGES** is amended as follows:

    1.   The following exclusion is added to **SECTION I – COVERAGES A AND B:**

      This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of the rendering or failure to render any professional services by or for you, including:

      (1)   The preparing, approving, or failing to prepare or approve maps, drawings, opinions, plans, reports, analyses, surveys, change orders, designs or specifications; and

      (2)   Inspection or engineering services.

2.     The following is added to **SECTION I – COVERAGES:**

    **COVERAGE E. – CONTRACTORS PROFESSIONAL SERVICES LIABILITY COVERAGE**

    **1.   Insuring Agreement**

      a.   We will pay those sums that the insured becomes legally obligated to pay as damages arising out of any "negligent act" committed by the insured, or on behalf of the insured to which this insurance applies.  We will have the right and duty to defend any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for any "negligent act" to which this insurance does not apply….

        *     *     *

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under

PRINCE & KEATING
ATTORNEYS AT LAW
3230 SOUTH BUFFALO DRIVE, SUITE 108
LAS VEGAS, NEVADA 89117
PHONE (702) 228-6800

Page 10 of 22

**SUPPLEMENTARY PAYMENTS –
COVERAGES A, B AND E.**

     b.    This insurance applies only if the damages arise out of a "negligent act" that:

         (1)    Takes place in the "coverage territory"; and

         (2)    Occurs during the policy period.

         *      *      *

*See* Exhibit "E", Endorsement No. C.

39.    The Amerisure Primary Policy contains the following Definitions:

**SECTION V – DEFINITIONS**

13.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

         *      *      *

17.    "Property damage" means:

     a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

     b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

         *      *      *

22.    "Your work":

     a.    Means:

         (1)    Work or operations performed by you or on your behalf; and

PRINCE & KEATING
ATTORNEYS AT LAW
3230 South Buffalo Drive, Suite 108
Las Vegas, Nevada 89117
Phone (702) 228-6800

Page 11 of 22

   (2)  Materials, parts or equipment furnished in connection with such work or operations.

  b.  Includes:

   (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

   (2) The providing of or failure to provide warnings or instructions.

      \*   \*   \*

"Construction Management Services" means the providing of construction expertise in the form of recommendations to the owner and design professional(s) during the planning and design phases, the scheduling of construction and the overall coordination of the separate prime contractors during the construction phase. (as added by Endorsement No. C)

"Contractors Professional Services" means the professional services that are necessary and incidental to the conduct of your contractor business described. (as added by Endorsement No. C)

"Design Services" means preparing or approving maps, drawings, opinions, plans, reports, analyses, surveys, change orders, designs or specifications, inspection and engineering services performed by or on behalf of the insured or others in the capacity as described in the above Schedule. (as added by Endorsement No. C)

"Negligent Act" means an error or omission by the insured arising out of the performance of or failure to perform "Contractors Professional Services", including "Design Services" and "Construction Management Services." (as added by Endorsement No. C)

      \*   \*   \*

## 2. Amerisure Umbrella Policy No. CU 1316446

40.  Amerisure issued policy number CU 1316446 to Summit, which follows form to the primary policy and has an effective period running from December 31, 2004 to September 20,

PRINCE & KEATING
ATTORNEYS AT LAW
3230 South Buffalo Drive, Suite 108
Las Vegas, Nevada 89147
Phone (702) 228-6800

Page 12 of 22

2005 (herein "Amerisure Umbrella Policy").[3]  A true and correct copy of the Amerisure Umbrella

Policy is attached as Exhibit "F".

41.     Summit completed and filed its application for the Amerisure Umbrella Policy in

Florida.

42.     Summit engaged the service of Construction Insurance Corp., a Florida producer,

to negotiate the terms and conditions of the Amerisure Umbrella Policy.

43.     All negotiations relative to the procurement of the Amerisure Umbrella Policy took

place in Florida.

44.     Amerisure issued and delivered the Amerisure Umbrella Policy to Summit in

Florida.

45.     Summit paid premiums, relative to the Amerisure Umbrella Policy, in Florida.

46.     The Amerisure Umbrella Policy affords coverage, subject to the terms and

conditions of the policy, for Summit's operations in Florida and elsewhere.

47.     The Amerisure Umbrella Policy states in relevant part:

**A.     COVERAGES**

**2.     Insuring Agreement**

a.     We will pay on behalf of the insured those sums that the insured becomes legally obligated to pay as damages which exceed the limit of "underlying liability insurance" or the "self-insured retention" because of:

(1)     "Bodily injury",

(2)     "Property damage" or

(3)     "Personal and advertising injury"

---

[3] While originally written to be effective until December 31, 2005, the Amerisure Umbrella Policy was also cancelled effective September 20, 2005.

PRINCE & KEATING
ATTORNEYS AT LAW
3230 South Buffalo Drive, Suite 108
Las Vegas, Nevada 89117
Phone (702) 228-6800

Caused by an "occurrence" to which this insurance applies.

b.  This insurance applies to "bodily injury", "property damage", and "personal and advertising injury" only if:

\*      \*      \*

(2)  The "bodily injury", "property damage", and "personal and advertising injury" occurs during the policy period; and …

\*      \*      \*

*See* Exhibit "F", Section A, pg. 1 of 17.

48.  The Amerisure Umbrella Policy contains the following Definitions:

**E.      DEFINITIONS**

13.  "Occurrence" means:

a.      For "bodily injury" and "property damage", an accident, including continuous or repeated exposure to substantially the same general harmful conditions resulting in "bodily injury" or "property damage, or…

\*      \*      \*

19.  "Property damage" means:

a.      Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.      Loss of sue of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it…

\*      \*      \*

23.  "Underlying liability insurance" means:

PRINCE & KEATING
ATTORNEYS AT LAW
3230 SOUTH BUFFALO DRIVE, SUITE 108
LAS VEGAS, NEVADA 89117
PHONE (702) 228-6800

Page 14 of 22

a.   Policies listed in the Schedule of Underlying Insurance.

b.   Insurance coverage available to the insured under another insurance policy applicable to the:

(1)   Clam made or "suit" brought; or

(2)   "Occurrence"; or

c.   The "self-insured retention" when a. or b. above do not apply.

\*     \*     \*

*See* Exhibit "F", Section E, pg. 17 of 17.

**D.   AMERISURE'S COMMUNICATION WITH SUMMIT**

49.   On April 29, 2008, Amerisure acknowledged receipt of the Notice of Claim concerning alleged defective construction at the subject property.   Amerisure stated that the information it possessed indicated that the alleged defective construction and the first awareness of the alleged damage came during destructive testing performed in May 2007.  Further the April 29, 2008 letter included references to certain Amerisure Primary Policy's provisions and exclusions upon which Amerisure had reserved its rights to deny coverage. A true and correct copy of the April 29, 2008 letter is attached as Exhibit "G".

50.   On March 9, 2009, Amerisure issued a reservation of rights letter acknowledging receipt of Summit's February 24, 2009 tender of the *Unit-Owners'* lawsuit and agreeing to undertake the defense of the *Unit-Owners'* lawsuit subject to a reservation of rights.  The March 9, 2009 letter included citations to specific Amerisure Primary Policy's provisions and exclusions upon which Amerisure reserved its rights to deny coverage – specifically noting that "damage which occurs after the policy effective dates would not be covered under [the Amerisure Primary Policy]."   A true and correct copy of the March 9, 2009 letter is attached as Exhibit "H".

PRINCE & KEATING
ATTORNEYS AT LAW
3230 SOUTH BUFFALO DRIVE, SUITE 108
LAS VEGAS, NEVADA 89117
PHONE (702) 228-6800

Page 15 of 22

51.     On May 8, 2009, Amerisure issued an amended reservation of rights letter to Summit indicating that there remain questions as to whether the Amerisure Primary Policy would provide coverage for the Unit-Owners' lawsuit, as the alleged damages apparently occurred after the Amerisure Primary Policy had elapsed. A true and correct copy of the May 8, 2009 letter is attached as Exhibit "I".

## COUNTS FOR DECLARATORY JUDGMENT AGAINST SUMMIT

### COUNT I

### (NO "PROPERTY DAMAGE" AND/OR "BODILY INJURY" WITHIN THE AMERISURE POLICY PERIOD)

52.     Amerisure incorporates the allegations set forth within Paragraphs 1 through 51 as if fully set forth herein.

53.     The Coverage A insuring agreement of the Amerisure Primary Policy states that Amerisure "will have the right and duty to defend the insured against any 'suit' seeking ['bodily injury' or 'property damage,']" but only if the "bodily injury" and/or "property damage" "is caused by an 'occurrence'…" and "occurs during the policy period…" *See* Exhibit "E".

54.     The *Unit-Owners'* First Amended Complaint alleges that "[p]laintiff only became sufficiently aware of the defects and damages…through damage that arose after the time of purchase and as a result of complex inspections and intrusive testing performed by expert consultants." *See* Exhibit "C", ¶ 33.

55.     The complex inspections and intrusive testing performed by expert consultants on the subject property occurred, on information and belief, in May of 2007. *See* Exhibit "D", Attachment 3.

56.     Amerisure's Policies issued to Summit were effective from December 31, 2004 to September 20, 2005. *See* Exhibits "E" & "F".

PRINCE & KEATING
ATTORNEYS AT LAW
3230 SOUTH BUFFALO DRIVE, SUITE 108
LAS VEGAS, NEVADA 89117
PHONE (702) 228-6800

57.     Amerisure's Policies expired nearly twenty (20) months prior to the manifestation of any alleged "property damage" at the project. *See* Exhibits "E" & "F".

58.     Assuming <u>arguendo</u> that the First Amended Complaint alleges "property damage" caused by an "occurrence," which Amerisure denies, such alleged "property damage" initially manifested nearly two (2) years after the expiration of the Amerisure Primary and Umbrella Policies. Thus, any alleged "property damage" occurred outside of the Amerisure policy period and does not trigger Amerisure's duties and/or obligations under Coverage A of the Primary and Umbrella Policies.

## COUNT II

### (COVERAGE A – NO "PROPERTY DAMAGE" OR "BODILY INJURY" CASUED BY AN "OCCURRENCE")

59.     Amerisure incorporates the allegations set forth within Paragraphs 1 through 58 as if fully set forth herein.

60.     The *Unit Owners'* First Amended Complaint does not seek to recover for any alleged damage to other property, but rather, seeks to recover for alleged damage to the subject property itself as a result of Summit's defective construction and faulty workmanship. *See* Exhibits "B" & "C".

61.     Amerisure previously reserved its rights regarding a possible lack of coverage to Summit for the *Unit Owners'* lawsuit under Coverage A. *See* Exhibits "G", "H", & "I".

62.     Pleading in the alternative, if the Court does not absolve Amerisure of its duties and obligation under Coverage A by determining that all alleged damage and/or injury as contained in the *Unit Owners'* First Amended Complaint first manifested outside of the Amerisure policy period, Amerisure is not obligated to indemnify Summit for the <u>Unit Owners'</u> lawsuit, insofar as the allegations of the *Unit Owners'* First Amended Complaint fail to allege

PRINCE & KEATING
ATTORNEYS AT LAW
3230 SOUTH BUFFALO DRIVE, SUITE 108
LAS VEGAS, NEVADA 89117
PHONE (702) 228-6800

"bodily injury" and/or "property damage" caused by an "occurrence" as those terms are defined under the Amerisure's policies. *See* Exhibits "E" & "F".

## COUNT III

### (NO COVERAGE UNDER THE "CONTRACTORS PROFESSIONAL SERVICES LIABILITY COVERAGE ENDORSEMENT")

63.     Amerisure incorporates the allegations set forth within Paragraphs 1 through 62 as if fully set forth herein.

64.     The "Contractors Professional Services Liability Coverage Endorsement" states that "[t]his insurance applies only if the damages arise out of a 'negligent act'. . . ." *See* Exhibit "E".[4]

65.     "Negligent act," as defined under the Amerisure Primary Policy, means an error or omission by the insured arising out of the performance of or failure to perform "Contractors Professional Services", including "Design Services" and "Construction Management Services." *See* Exhibit "E", Endorsement No. C.

66.     On information and belief, Summit was neither the design professional, nor a part of the design team associated with the subject property, and thus, did not it engage in any action which qualifies as a "negligent act," as that term is defined in the Contractors Professional Services Liability Coverage Endorsement. *See* Exhibit "E".

67.     Rather, the *Unit Owners'* First Amended Complaint seeks damages to the subject property allegedly resulting from Summit's defective construction and faulty workmanship. *See* Exhibit "C" & "E".

68.     Thus, insofar as the Unit Owners do not seek damages and/or relief against

---

[4] The Amerisure Umbrella Policy issued to Summit does not contain the Contractors Professional Services Liability Coverage Endorsement

PRINCE & KEATING
ATTORNEYS AT LAW
3230 SOUTH BUFFALO DRIVE, SUITE 108
LAS VEGAS, NEVADA 89117
PHONE (702) 228-6800

Page 18 of 22

Summit arising out of a "negligent act," as that term is defined under the Amerisure Primary Policy, the Unit Owners' claims against Summit do not fall within the ambit of the Contractors Professional Services Liability Coverage Endorsement. *See* Exhibit "E".

## COUNT IV

### (COVERAGE A – APPLICABLE EXCLUSIONS)

69.     Amerisure incorporates the allegations set forth within Paragraphs 1 through 68 as if fully set forth herein.

70.     The *Unit Owners'* First Amended Complaint seeks damages allegedly resulting from defective construction and faulty workmanship at the subject property. *See* Exhibit "C".

71.     Amerisure previously reserved its rights regarding a possible lack of coverage to Summit for the *Unit Owners'* lawsuit under Coverage A. *See* Exhibits G"", H"", & "I".

72.     Pleading in the alternative, if the Court determines that the underlying lawsuit alleges "property damage" caused by an "occurrence" and if this Court does not absolve Amerisure of its defense obligation by determining that all damage and/or injury alleged in the Unit Owners' First Amended Complaint first manifested outside of the Amerisure policy period, Amerisure is not obligated to indemnify Summit in connection with the *Unit Owners'* lawsuit under Coverage A of the Amerisure Policy for the following reasons:

   a.     Coverage for the claims asserted in the *Unit Owners'* lawsuit is excluded by the "Expected or Intended Injury" exclusion;

   b.     Coverage for the claims asserted in the *Unit Owners'* lawsuit is excluded by Exclusion j(5), "Damage to Property";

   c.     Coverage for the claims asserted in the *Unit Owners'* lawsuit is excluded by Exclusion j(6), "Damage to Property";

PRINCE & KEATING
ATTORNEYS AT LAW
3230 SOUTH BUFFALO DRIVE, SUITE 108
LAS VEGAS, NEVADA 89117
PHONE (702) 228-6800

d.   Coverage for the claims asserted in the *Unit Owners'* lawsuit is excluded by the "damage to your work" exclusion;

e.   Coverage for the claims asserted in the *Unit Owners'* lawsuit is excluded by the "Fungi or Bacteria" exclusion;

f.   Coverage for the claims asserted in the *Unit Owners'* lawsuit is excluded, in whole or in part, by the absolute pollution exclusion;

g.   Coverage for the claims asserted in the *Unit Owners'* lawsuit is excluded by the "professional services" exclusion; and

h.   To the extent Summit has failed or fails to "[c]ooperate with [Amerisure] in the investigation or settlement of the claim or defense against the "suit," or has incurred costs or expenses or assumed any obligation without Amerisure's consent, Coverage under the Amerisure policies is unavailable.

*See* Exhibit "E".

73.   The allegations of the *Unit Owners'* First Amended Complaint implicate one, if not several, of the defenses listed in this Count IV. Thus, Amerisure owes no obligation to indemnify Summit in connection with the *Unit Owners'* lawsuit for the reasons set forth herein.

## COUNT V

### (CONTRACTORS PROFESSIONAL SERVICES LIABILITY COVERAGE ENDORSEMENT - APPLICABLE EXCLUSIONS)

74.   Amerisure incorporates the allegations set forth within Paragraphs 1 through 73 as if fully set forth herein.

75.   The *Unit Owners'* First Amended Complaint seeks damages allegedly resulting from defective construction and faulty workmanship at the subject property. *See* Exhibit "C".

PRINCE & KEATING
ATTORNEYS AT LAW
3230 South Buffalo Drive, Suite 108
Las Vegas, Nevada 89117
Phone (702) 228-6800

76.     Amerisure previously reserved its rights regarding a possible lack of coverage to Summit for the *Unit Owners'* lawsuit under Coverage E.  *See* Exhibits "G", "H", & "I".

77.     Pleading in the alternative, even if the Court does not determine the inapplicability of "Contractors Professional Services Liability Coverage Endorsement" or determines that any "negligent act" committed by Summit occurred within the Amerisure policy period, Amerisure is not obligated to indemnify Summit for the *Unit Owners'* lawsuit under the "Contractors Professional Services Liability Coverage Endorsement" by application of the following exclusions:

a.     Coverage for the claims asserted in the *Unit Owners'* lawsuit is excluded by Exclusion a., "[d]amages arising out of a: (1) Dishonest; (2) Fraudulent; (3) Criminal; or (4) Malicious; act, error or omission committed by or at the direction of the insured";

b.     Coverage for the claims asserted in the *Unit Owners'* lawsuit is excluded by Exclusion b., "[d]amages expected, or intended by or at the direction of the insured, or that should have been reasonably foreseen by the insured";

c.     Coverage for the claims asserted in the *Unit Owners'* lawsuit is excluded by Exclusion k., "[d]amages arising out of express warranties or guarantees"; and

d.     Coverage for the claims asserted in the *Unit Owners'* lawsuit is excluded by Exclusion t., "[f]aulty workmanship, construction or work not in accordance with the design of the project or the construction documents, on projects for which the 'design services' are performed by the insured and any construction, erection, fabrication, installation, assembly,

PRINCE & KEATING
ATTORNEYS AT LAW
3230 SOUTH BUFFALO DRIVE, SUITE 108
LAS VEGAS, NEVADA 89117
PHONE (702) 228-6800

Page 21 of 22

manufacture, or supplying of equipment or materials incorporated therein, is wholly or partly performed by: (1) [t]he insured . . . .";

*See* Exhibit "E".

78.     The allegations of the *Unit Owners'* First Amended Complaint implicate one, if not several, of the defenses listed in this Count V.  Thus, Amerisure owes no obligation to indemnify Summit in connection with the *Unit Owners'* lawsuit for the reasons set forth herein.

**WHEREFORE**, AMERISURE INSURANCE COMPANY and AMERISURE MUTUAL INSURANCE COMPANY request entry of a declaratory judgment in their favor and against the Defendants, finding and declaring that Amerisure has no duty to indemnify Summit in connection with those damages asserted against it in the *Unit Owners'* lawsuit or in connection with the cross-claim described herein, together with any other further relief this court deems just and proper.

DATED this _27_ day of April, 2010.

Respectfully submitted

By: _____

DENNIS M. PRINCE
Nevada Bar No. 5092
DOUGLAS J. DUESMAN
Nevada Bar No. 10341
**PRINCE & KEATING**
3230 South Buffalo Drive
Suite 108
Las Vegas, Nevada  89117
Attorneys for Plaintiffs
*Amerisure Insurance Company &*
*Amerisure Mutual Insurance Company*

PRINCE & KEATING
ATTORNEYS AT LAW
3230 South Buffalo Drive, Suite 108
Las Vegas, Nevada 89117
Phone (702) 228-6800